**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID A. KRATZ, an individual; MICHELLE D. KRATZ, an individual; <br><br>Plaintiffs, <br><br>v. <br><br>COUNTRYWIDE BANK, a division of TREASURY BANK, N.A.; et al., <br><br>Defendants. | Case No. CV08-01233 DSF (OPx) <br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

After consideration of the parties' Trial Briefs and the oral arguments of counsel, the Court makes the following findings of facts and conclusions of law.

# FINDINGS OF FACT

1. Plaintiffs David and Michelle Kratz have two remaining claims against defendant Countrywide Bank, FSB both of which are brought pursuant to the Truth in Lending Act, 15 U.S.C. Sections 1601, et seq. ("TILA").  Plaintiffs' first claim is for rescission based on Countrywide's alleged failure to provide the required number of completed copies of the notice of Plaintiffs' right to rescind their February 2005 loan transaction.  Plaintiffs' second claim is for damages based on Countrywide's alleged failure to accept their February 2008 rescission demand. (Second Amended Complaint; April 29, 2009 Order GRANTING Motion of Defendant Countrywide Bank, FSB, for Partial Summary Judgment ("April 29 Order") at 4-7.)

2. Plaintiffs purchased their home in Corona, California, for $489,000 in December 2001, and refinanced their mortgage four times: in July 2002, in January 2003, in December 2003, and again in February 2005, when they obtained the refinance loan that is the subject of this dispute from Countrywide.  (Plaintiffs' Supplemental Separate Statement of Genuine Issues of Material Fact in Opposition to Countrywide Bank's Motion for Partial Summary Judgment ("Plaintiffs' Separate Statement"), Undisputed Fact Nos. 1-2, 5-10.)

3. Each time Plaintiffs refinanced, they obtained cash to pay for upgrades and improvements to their home.  (*Id.*, Undisputed Fact Nos. 5-12, 96-99.)

4. Plaintiffs testified that they signed their Countrywide loan documents on February 25, 2005.  (*Id.*, Undisputed Fact No. 74.)

5. Included in the closing documents that Plaintiffs received was at least one copy of a notice of Plaintiffs' right to rescind the loan transaction within three days ("Notice of Right to Cancel").  (Second Amended Complaint, Ex. B.)

6. The Notice of Right to Cancel that Plaintiffs received disclosed the acquisition of a security interest in their property; Plaintiffs' right to rescind the transaction within three days; how to exercise that right, including a form for that

1  purpose and the lender's address; and the effects of rescission.  (Second Amended
2  Complaint, Ex. B.)
3        7.   Mr. Kratz understood when he signed the loan documents that he had a
4  right to rescind the loan within three days.  (Plaintiffs' Separate Statement,
5  Undisputed Fact No. 92.)
6        8.   Plaintiffs' Countrywide loan funded on or about March 3, 2005.  The
7  total amount of the loan was $910,000.  Plaintiffs used the proceeds to pay off
8  roughly $780,000 in existing mortgage loans, and spent the remaining $120,000 on
9  home improvements.  (*Id.*, Undisputed Fact Nos. 96-99; *see also* Deposition of
10 David Kratz at 123:14-124:23, 127:13-129:5.)
11       9.   In or around 2007, Plaintiffs' used car dealership went out of business
12 as a result of a dispute between Plaintiffs and their lenders, and Plaintiffs filed for
13 bankruptcy.  (Plaintiffs' Separate Statement, Undisputed Fact No. 106; Deposition
14 of Michelle Kratz ("M. Kratz Depo.") at 23:18-24:13, 166:15-167:10.)
15       10.  Plaintiffs received a discharge in bankruptcy in January 2008.  (M.
16 Kratz Depo. at 23:18-24:13.)
17       11.  In February 2008 Plaintiffs sought to refinance their loan with
18 Countrywide.  They were told that, due to the down-turn in the market, they owed
19 more on their loan than the home was worth.  In order to refinance, Plaintiffs would
20 have to come up with the difference (roughly $300,000) between the amount of a
21 new loan and the amount they owed on their existing loan.  This Plaintiffs could not
22 do.  (Plaintiffs' Separate Statement, Undisputed Fact Nos. 109-111.)
23       12.  Plaintiffs stopped making their mortgage payments and hired a lawyer.
24 Plaintiffs continue to live in their home, but they have not made a mortgage
25 payment since January 2008.  (*Id.*, Undisputed Fact Nos. 114-118.)
26       13.  On February 20, 2008 (two years and 360 days after Plaintiffs claim
27 they signed their loan documents), Plaintiffs' counsel wrote to Countrywide and
28 demanded rescission of Plaintiffs' loan on the ground that the Notice of Right to

Cancel that Plaintiffs received did not contain the date of the transaction and the date when the three-day rescission period expired. (*Id.*, Undisputed Fact No. 118.)

14. Within 20 days, Countrywide declined the demand because its file contains a completed Notice of Right to Cancel bearing both Plaintiffs' signatures, indicating that each Plaintiff received two completed copies. (*Id.*, Undisputed Fact No. 119.)

15. Mrs. Kratz testified that, because Plaintiffs are "upside down" on their mortgage, she does not believe she should have to honor her contractual obligation to repay the loan. (M. Kratz Depo. at 246:13-247:23.)

16. Plaintiffs do not have the funds to tender a return of the loan proceeds net of the finance charges.

## **CONCLUSIONS OF LAW**

17. TILA provides a borrower the right to rescind a refinance loan secured by an interest in the borrower's residence. 15 U.S.C. § 1635(a). The right to rescind lasts for three days following the consummation of the transaction so long as the lender gives the borrower notice of the right to rescind (and provides other disclosures not at issue here). *Id.*

18. TILA's implementing regulation, known as Regulation Z, requires a lender to deliver two copies of the notice of the right to rescind to each borrower entitled to rescind the transaction. 12 C.F.R. § 226.23(b)(1). The notice must disclose:

 (i) The retention or acquisition of a security interest in the consumer's principal dwelling.
 (ii) The consumer's right to rescind the transaction.
 (iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.
 (iv) The effects of rescission, as described in paragraph (d) of this section.
 (v) The date the rescission period expires.

*Id*. If the lender fails to provide two copies of the notice of the right to rescind or provides notice that does not comply with the requirements of TILA and Regulation Z, the borrower's right to rescind is extended for up to three years from the date of consummation of the transaction. *See* 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3).

19. TILA prescribes the following sequence of events to effectuate rescission: (1) the borrower notifies the lender that he or she would like to rescind the loan; (2) the lender terminates its security interest and returns payments made by the borrower; and (3) the borrower tenders the loan proceeds or the property to the lender. 15 U.S.C. § 1635(b); 12 C.F.R. § 226.23(d)(1)-(3).

20. The provision for return of "property" to the lender is not applicable here because Countrywide provided only money in the form of a refinance loan, not property (such as lumber, siding, or fixtures), to Plaintiffs. *See* Federal Reserve Board Official Staff Commentary to 12 C.F.R. § 226.23(d)(3), Comment 1 ("Property exchange. Once the creditor has fulfilled its obligations under § 226.23(d)(2), the consumer must tender to the creditor any property or money the creditor has already delivered to the consumer. At the consumer's option, property may be tendered at the location of the property. For example, if lumber or fixtures have been delivered to the consumer's home, the consumer may tender them to the creditor by making them available for pick-up at the home, rather than physically returning them to the creditor's premises. <u>Money already given to the consumer must be tendered at the creditor's place of business</u>.") (emphasis added).

21. "The equitable goal of rescission under TILA is to restore the parties to the 'status quo ante.'" *Am. Mortgage Network, Inc. v. Shelton*, 486 F.3d 815, 820 (4th Cir. 2007). Thus, upon the lender's termination of the security interest, the borrower must return the balance of the loan proceeds. 15 U.S.C. § 1635(b); 12 C.F.R. § 226.23(d)(3); *Merriman v. Beneficial Mortgage Co. of Kansas, Inc. (In re Merriman)*, 329 B.R. 710, 718 (Bankr. D. Kan. 2005) (recognizing the "reciprocal

payment obligations" of the lender and borrower under TILA Section 1635(b) and Regulation Z Section 226.23(d)).

22. Rescission is not effectuated on mere notice by the borrower. "Rescission 'does not mean an annulment [of the loan contract] that is definitively accomplished by unilateral pronouncement, but rather a remedy that restores the *status quo ante*.'" *Stanley v. Household Fin. Corp. III (In re Stanley)*, 315 B.R. 602, 615 (Bankr. D. Kan. 2004) (citations omitted). "[T]he voiding of the security interest is a step in the procedure outlined in TILA § 1635(b) that begins upon a creditor's receipt of the notice of rescission from a debtor." *Id.*

23. TILA expressly authorizes courts to modify the sequence of rescission: "The procedures prescribed by this subsection shall apply except when otherwise ordered by a court." 15 U.S.C. § 1635(b); *see also* 12 C.F.R. § 226.23(d)(4) ("The procedures outlined in paragraphs (d)(2) and (3) [describing sequence of TILA rescission] may be modified by court order.")

24. The Ninth Circuit has interpreted this provision to permit courts to require the borrower to tender the loan proceeds to the lender before the lender is required to terminate its security interest in the property. *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1171 (9th Cir. 2003).

25. In *Yamamoto*, plaintiff borrowers received a refinance loan from defendant lender. The borrowers defaulted and filed for bankruptcy. After the bankruptcy was dismissed, the borrowers attempted to rescind their loan, claiming that they were not provided with the notice of right to cancel required by TILA. *Id.* at 1168-69. Although the district court found a triable issue of fact as to whether the borrowers had received the notice of right to cancel, the court entered summary judgment in favor of the lender on the rescission claim because the borrowers were unable to tender their loan proceeds as part of the rescission process. *Id.* at 1169.

26. The Ninth Circuit affirmed, holding that the district court had the discretion to condition rescission on the borrowers' tender of the loan proceeds.

1  Because the lender contested the borrowers' rescission demand, the loan transaction
2  was not automatically rescinded, as it would have been had the lender not contested
3  the notice of rescission. *Id.* at 1172. "In these circumstances, it cannot be that the
4  security interest vanishes immediately upon the giving of notice [of rescission].
5  Otherwise, a borrower could get out from under a secured loan simply by *claiming*
6  TILA violations, whether or not the lender had actually committed any. Rather,
7  under the statute and regulation, the security interest 'becomes void' only when the
8  consumer 'rescinds' the transaction. In a contested case, this happens when the
9  right to rescind is determined in the borrower's favor." *Id.* (emphasis in original).

  27. Thus, the Ninth Circuit held that the district court properly exercised its discretion to impose conditions on rescission to assure that the borrowers would meet their tender obligations:

> As rescission under § 1635(b) is an on-going process consisting of a number of steps, there is no reason why a court that may alter the sequence of procedures *after* deciding that rescission is warranted, may not do so *before* deciding that rescission is warranted when it finds that, assuming grounds for rescission exist, rescission still could not be enforced because the borrower cannot comply with the borrower's rescission obligation no matter what. Such a decision lies within the court's equitable discretion, taking into consideration all the circumstances including the nature of the violations and the borrower's ability to repay the proceeds. If, as was the case here, it is clear from the evidence that the borrower lacks capacity to pay back what she has received (less interest, finance charges, etc.), the court does not lack discretion to do before trial what it could do after.

*Id.* at 1173.

  28. Because the borrowers were unable to tender, judgment against them on their rescission claim was affirmed. *Id.*; *see also LaGrone v. Johnson*, 534 F.2d

1360, 1362 (9th Cir. 1976) (holding that district court erred in failing to condition rescission on borrower's tender of the net amounts advanced by lender).

29. The Fourth, Sixth and Eighth Circuits have also approved of conditioning rescission on the borrower's tender of loan proceeds. *Powers v. Sims & Levin*, 542 F.2d 1216, 1222 (4th Cir. 1976) ("What we do hold is that when rescission is attempted under circumstances which would deprive the lender of its legal due, the attempted rescission will not be judicially enforced unless it is so conditioned that the lender will be assured of receiving its legal due."); *Rudisell v. Fifth Third Bank*, 622 F.2d 243, 254 (6th Cir. 1980) ("[TILA] clearly does not require the debtor to tender first. It contemplates the creditor tendering first. But upon the creditor fulfilling its obligations under the statute, the debtor then must tender. Since rescission is an equitable remedy, the court may condition the return of monies to the debtor upon the return of property to the creditor.") (citations omitted); *FDIC v. Dev. Co.*, 938 F.2d 889, 890 (8th Cir. 1991) ("TILA generally provides that the creditor shall perform first (i.e., return monies paid by the debtor and release its security interest); however, the Act gives courts discretion to devise other procedures, 15 U.S.C. § 1635(b), including conditioning rescissions upon the debtor's prior return of the principal.").

30. The rationale for conditioning rescission on the borrower's prior return of the loan proceeds is that, where the borrower cannot comply with her rescission obligations, the sequence of events provided by TILA results in "unduly harsh" penalties which reduce the lender to an "unsecured creditor" and allow the borrower to remain "judgment proof." *Palmer v. Wilson*, 502 F.2d 860, 862 (9th Cir. 1974) (holding that district court has equitable power to condition rescission on tender of repayment by debtor).

31. Where rescission is not conditioned on the borrower's prior return of loan proceeds, rescission can result in the "free house" – or "gotcha" – phenomenon:

The net effect then, would be that a [borrower] receives the entire

>benefit of the credit transaction, often substantial sums of money or what amounts to a free house, while the creditor receives nothing, which would be contrary to the purpose of rescission [i.e., to restore the status quo ante]. The concept that a [borrower] is entitled to a free home or financial windfall because a creditor failed to check a box on a notice of right to rescind form is an irrational result that fails to recognize the full scope and policy behind the TILA's rescission framework.

*In re Stanley*, 315 B.R. at 615-16 (citations omitted) (holding that court may impose equitable conditions on rescission to insure that borrower meets its rescission obligations).

32. "Clearly it was not the intent of Congress to reduce the mortgage company to an unsecured creditor or to simply permit the debtor to indefinitely extend the loan without interest." *Am. Mortgage Network*, 486 F.3d at 820-21 (holding that trial court properly denied rescission given the borrowers' inability to tender payment of the loan amount).

33. In determining whether to condition rescission upon the borrower's prior tender of loan proceeds, courts consider the equities of the particular case, including the severity of the alleged disclosure violations, the borrower's ability to repay the loan, and the goal of rescission under the statute – to return the parties to the positions they held prior to entering into the transaction. *See Yamamoto*, 329 F.3d at 1171; *Powers*, 542 F.2d at 1221; *Palmer*, 502 F.2d at 862; *Am. Mortgage Network*, 486 F.3d at 820 ("The equitable goal of rescission under TILA is to restore the parties to the 'status quo ante.'"); *In re Merriman*, 329 B.R. at 721 ("Rescission, whether statutory or common law, is an equitable remedy. Its relief, in design and effect, is to restore the parties to their pre-transaction positions.") (finding notice of right to cancel deficient because lender failed to check box indicating when three-day rescission period expired, but conditioning TILA rescission on borrower's

tender of loan proceeds).

34. Where the alleged TILA violations are not egregious, courts not only may, but "should," condition rescission on repayment of the amounts advanced by the lender. *LaGrone*, 534 F.2d at 1362 (finding three material failures to disclose, but nevertheless conditioning rescission on tender).

35. Before Plaintiffs refinanced their mortgage with Countrywide, Countrywide had not lent $910,000 to Plaintiffs, and Plaintiffs had not granted Countrywide a security interest in their property. If Countrywide is required to terminate its security interest, then Countrywide should recoup the $910,000 that it loaned to Plaintiffs (less payments made by Plaintiffs). Only then will the parties be returned to the "status quo ante." *Am. Mortgage Network*, 486 F.3d at 820 ("The equitable goal of rescission under TILA is to restore the parties to the 'status quo ante.'").

36. Plaintiffs may not demand TILA rescission while also asking this Court for some alternative, so-called "equitable" remedy that would extinguish their repayment obligation and allow them to keep their house.

37. The Court will not consider Plaintiffs' allegations of fraud, breach of fiduciary duty, or unfair competition as "equities of the case." Such claims against Countrywide were dismissed by the Court on summary judgment and will not be revived in connection with the Court's ruling on the issue of rescission.

38. In any event, there is no authority for the proposition that alleged wrongdoing unrelated to alleged TILA violations should be considered by the Court in deciding whether to condition rescission on Plaintiffs' tender.

39. Plaintiffs demanded rescission of their loan in February 2008. Since that time, they have not tendered their loan proceeds, or any part thereof, to Countrywide. To the contrary, Plaintiffs have taken the position that they should not have to pay the amount owed on the loan. Also, Plaintiffs have been living in their home rent-free for more than 17 months. Accordingly, the equities weigh in

favor of requiring Plaintiffs to tender the balance of the loan proceeds before Countrywide is required to void its security interest.

40. There is no factual or legal basis for reducing the loan balance that Plaintiffs must tender by $40,000, the alleged value of the home improvements that Plaintiffs claim they made with the proceeds from their loan.

41. There also is no factual or legal basis for allowing Plaintiffs to tender the property in lieu of tendering the loan proceeds. The goal of rescission is to return the parties to their pre-transaction positions. Prior to the loan transaction, Plaintiffs already owned their property. Countrywide provided cash to Plaintiffs in the form of a refinance loan. In order to return Countrywide to its pre-transaction position, Plaintiffs must return the balance of the loan proceeds.

42. Even assuming that Plaintiffs were entitled to tender the property in lieu of tendering the loan proceeds, which they are not, there is no factual or legal basis for valuing the property as of the date of Plaintiffs' notice of rescission. The rescission is not effective unless and until the Court determines the right to rescind in Plaintiffs' favor.

43. Again assuming that Plaintiffs were entitled to tender the property in lieu of tendering the loan proceeds, which they are not, there is no practical method for valuing the property at the time of such purported tender. Plaintiffs have provided no evidence of the fair market value of the property in a transaction between a willing buyer and a willing seller, much less evidence of the value that Countrywide might obtain if it were required to find a buyer for the property.

44. With the bankruptcy discharge, Plaintiffs have no personal liability on the loan. However, if Plaintiffs want to rescind the loan transaction – that is, keep the property and have the loan removed – they must pay to Countrywide the loan proceeds net of finance charges.

45. Accordingly, Plaintiffs have 60 days from the date of this Order to tender the cash proceeds of their loan to Countrywide, less payments made. If

1  Plaintiffs tender within 60 days, then Countrywide shall have 20 days from its
2  receipt of the tender to terminate its security interest in the property.
3      46.   If Plaintiffs fail to tender within 60 days, judgment shall be entered in
4  favor of Countrywide and against Plaintiffs on Plaintiffs' claims for rescission and
5  damages under TILA.

Dated:  9/21/09       _____

                          Hon. Dale S. Fischer
                          United States District Judge